IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BRENT SMITH and BRENT JENKINS<br>on behalf of themselves and all those<br>similarly situated who consent to<br>representation,<br><br>Plaintiffs,<br><br>v.<br><br>CHEPES MEXICAN GRILL, LLC,<br>a Georgia Corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action Number:<br>    1:12-cv-00729-WBH |

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

WHEREAS, Plaintiffs Brent Smith ("Smith") and Brent Jenkins ("Jenkins"), et al., filed a civil action on or about March 2, 2012, individually and on behalf of all other similarly-situated persons, against Defendant Chepes Mexican Grill, LLC ("Defendant" or "Chepes") in the United States District Court, Northern District of Georgia, styled *Brent Smith, et al. v. Chepes Mexican Grill, LLC, et al.*, CASE #: 1:12-cv-00729-WBH (the "Action");

WHEREAS, it is the desire of the Parties to fully, finally, and forever memorialize, settle, compromise, and discharge all disputes and claims that have been brought in the Action or that reasonably arise out of the facts alleged in the Action, *i.e.,* the alleged practices set forth in detail in the pleadings in the Action;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, the Parties enter into this Joint Stipulation of Settlement and Release (hereinafter "Settlement Agreement"), subject to the Court's approval, as follows:

1. Definitions:

    a. The "Settlement Class" or the "Class" consists of current or former employees who worked for Chepes who have filed consents in the Action. These employees include Smith, Jenkins, Kristian Ogletree ("Ogletree"), Rodrick Ringo ("Ringo"), Davis Pidgeon ("Pidgeon") and Nicole Casorio ("Casorio").

    b. The "Settlement Class" does not include opt-in Plaintiff Derrick Lockamy.

    c. "Releasees" refers to and includes Defendant, its present and former subsidiaries, divisions, parent companies, holding companies, stockholders, officers, directors, employees, agents, servants, representatives, attorneys,

1

insurers, affiliates, and the successors, heirs and assigns of any such entity or person, as well as any individual that could be included within the definition of "employer" under either the Fair Labor Standards Act ("FLSA") including but not limited to all officers, directors and managers of Chepes in their personal capacities.

    d.   The "Parties" refers collectively to Plaintiffs and Defendant.

    e.   "Class Counsel" refers to Martin & Martin, LLP.

2.   This Settlement Agreement is made and entered into by and between the Plaintiffs and the Defendant. This Settlement Agreement is subject to the terms and conditions hereof and to the approval of the Court.  Plaintiffs and Defendant hereby agree to fully and finally settle, compromise and resolve all claims that were or could have been brought in the Action, on the terms and conditions set forth in this Settlement Agreement.

3.   Nothing contained herein, nor the consummation of this Settlement Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant or any Releasees.  Each of the Parties hereto has entered into this Settlement Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.  In particular, and without limiting the generality of the foregoing, nothing in this settlement shall be offered or construed as an admission of liability, wrongdoing, impropriety, responsibility or fault whatsoever by Defendant or Releasees, who expressly deny any liability, wrongdoing, impropriety, responsibility or fault whatsoever.

4.   Class Counsel has conducted an investigation into the facts of the Action as well as the financial status of the Defendant.  Based on their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with Defendant for the consideration and on the terms set forth in this Settlement Agreement is fair, reasonable, adequate, and in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay, the risk of loss or limited recovery, and the defenses asserted by Defendant.  Defendant and Defendant's counsel also agree the settlement as stated in this Settlement Agreement is reasonable and fair.

5.   The Settlement Agreement contains and constitutes a full and complete settlement and release (as defined below) by Plaintiffs, which release includes in its effect Defendant and all Releasees.

6.   Subject to Court approval of the Settlement Agreement, and on the terms and conditions set forth in this Settlement Agreement, Defendant Chepes will pay as follows:

    a.   Defendant Chepes will pay to each Class Member as follows: $500 to Smith, $500 to Jenkins, $100 to Ogletree, $100 to Ringo, $100 to Pidgeon and $100 to Casorio.

    b.   Plaintiffs will each execute general releases of all claims under state and federal law, attached as Exhibit A.

2

    c.  Subject to approval by the Court, Defendant Chepes agrees to pay to Class Counsel the sum of $1,500 as attorneys' fees and costs and expenses, in full and complete satisfaction of all claims by Plaintiffs and their counsel for attorneys' fees, costs and expenses of any kind whatsoever. The total attorneys' fees and costs actually paid will be as approved by the Court in its Final Order. Class Counsel and Defendant agree that Defendant will make such payment within 10 business days after execution of the Agreement by all of the Plaintiffs, to the person designated by Class Counsel to receive payment. Defendant Chepes will report the payments to Class Counsel using an IRS Form 1099. The enforceability of this Agreement is not contingent on the amount of attorneys' fees or costs awarded. Without limiting the generality of the foregoing, any dispute regarding the amount of attorneys' fees or costs, and/or any appeal related thereto, shall not affect or delay the finality of this Agreement, and shall not affect or delay the entry of dismissal of the Lawsuit.

## MUTUAL FULL COOPERATION

7.    The parties agree to fully cooperate with each other to accomplish the terms of this Settlement Agreement, including but not limited to, execution of such documents and to take such other action as may be reasonably necessary to implement the terms of this Settlement Agreement. The Parties to this Settlement Agreement shall use their best efforts, including all efforts contemplated by this Settlement Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Settlement Agreement and the terms set forth herein. As soon as practicable after execution of this Settlement Agreement, Class Counsel shall, with the assistance and cooperation of Defendant Chepes and its counsel, take all necessary steps to secure the Court's approval of this Settlement Agreement and to dismiss the Action with prejudice upon complete performance of the terms and conditions of the Settlement as approved by the Court.

8.    The Parties agree to file this Settlement Agreement with a Joint Motion for Preliminary Approval of the Settlement Agreement on or before _____.

## DUTIES OF THE PARTIES

9.    Promptly upon execution of this Settlement Agreement, the Parties shall apply to the Court for the entry of an Order of Final Approval:

    a.  Approving the settlement;

    b.  If the Court determines that a fairness hearing is necessary, the parties will cooperate to ensure that it takes places as expeditiously as possible;

    c.  Setting a deadline for the dismissal of this lawsuit; and

    d.   dismissing this action on the merits and with prejudice any individual or Class claims which are released by this settlement, upon satisfaction of all payments and obligations hereunder.

## POTENTIAL VOIDING OF THE SETTLEMENT AGREEMENT

10.    A failure of the Court to approve any material condition of this Settlement Agreement which effects a fundamental change of the Parties' Settlement shall render the entire Settlement Agreement voidable and unenforceable as to all Parties herein at the option of the party adversely affected thereby.  However, neither party may void the Settlement Agreement based on the Court's approval or non-approval of the amount of attorneys' fees or costs.  The Court's failure to approve Plaintiffs' fee request shall not render the Settlement Agreement unenforceable.

11.    If this Settlement is voided under the prior paragraph, this Agreement shall have no force or effect; all negotiations, statements and proceedings related thereto shall be without prejudice to the rights of any party, all of whom shall be restored to their respective positions in the lawsuit prior to the settlement; and neither this Agreement nor any ancillary documents, actions or filings the parties agreed to shall be admissible or offered into evidence in the lawsuit or any other action for any purpose.

## RELEASES AND PAYMENT PROCESSES

12.    Each Class Member shall execute the General Release Agreements attached as Exhibit A.

13.    Chepes shall mail payments by check to Class Members within ten (10) business days of the execution of all of the General Release Agreements attached as Exhibit A.

14.    Class Members shall have one hundred twenty (120) calendar days after the date of mailing to cash their settlement checks.

15.    If any Class Members do not cash their checks within 120 days after mailing of the checks and their check is not returned, their checks will be void and a stop-payment will be placed.  In such event, those Class Members will be deemed to have waived irrevocably any right in or claim to a settlement share, but the Settlement Agreement nevertheless will be binding upon them.

16.    Chepes shall mail the Court-approved payments of attorneys' fees and costs to Class Counsel no later than ten (10) business days after execution of all of the Agreement by Plaintiffs.

## PARTIES' AUTHORITY

17.    The signatories hereby represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties hereto to the terms and conditions hereof.

## ENFORCEMENT ACTIONS

18.     This Settlement Agreement is fully enforceable in the U.S. District Court for the Northern District of Georgia before the Honorable Willis B. Hunt or such judge as may be designated in his stead by the procedures of the Court, who shall retain jurisdiction to enforce this agreement.

## CONSTRUCTION

19.     The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of arm's length negotiations between the Parties and that the Settlement Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his or its counsel participated in the drafting of this Settlement Agreement.

## CAPTIONS AND INTERPRETATIONS

20.     Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Settlement Agreement or any provision hereof.  Each term of this Settlement Agreement is contractual and not merely a recital.

## MODIFICATION

21.     This Settlement Agreement may not be changed, altered, or modified except in writing and signed by the Parties hereto, and approved by the Court.  This Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

## INTEGRATION CLAUSE

22.     This Settlement Agreement constitutes the entire agreement between the Parties relating to the settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, agreed to by the Parties in this matter, are merged herein. However the Settlement Term Sheet shall be evidence of the intent of the parties herein except where the Parties explicitly specify a different intent.  No rights hereunder may be waived except in writing.

## NO PRIOR ASSIGNMENTS

23.      This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators and successors.  The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

## SIGNATORIES

24.     It is agreed that each Class Member shall sign and execute this Settlement Agreement.

## PUBLICITY

25.     Each of the Plaintiffs and Class Members, Class Counsel, Defendant and their Counsel agree to limit any media comments or publications to matters derived from or contained in the Settlement Agreement.   Defendant or any of the parties may report or describe this Settlement Agreement to the extent necessary or appropriate in the course of public reporting under any regulatory provisions or as required by law.   No party shall issue any press release about the settlement or its terms.   The settlement and its terms shall remain confidential until preliminary approved by the Court.    Settlement discussions and negotiations shall remain confidential and shall not be shared with anyone not a party to this case.

## COUNTERPARTS

26.     This Settlement Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties.   Signatures sent by facsimile machine or scanned signatures in Portable Document Format sent by email shall be deemed original signatures.

Dated: _____1/4/13_____          _____, CFO, Chepes Mexican Grill

Dated: _____          _____

Dated: _____          _____

Dated: _____          _____

Dated: _____          _____

Dated: _____          _____

6

# Exhibit A
# General Releases

## AGREEMENT AND GENERAL RELEASE

Chepes Mexican Grill, LLC ("Chepes") and Brent Smith, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1.  **Consideration.** In consideration for signing this Agreement and General Release, and complying with its terms, and in accordance with the parties' Settlement Agreement in the case styled *Brent Smith, et al. v. Chepes Mexican Grill, LLC*, CASE #: 1:12-cv-00729-WBH ("Settlement Agreement"), Chepes agrees to pay to Employee Five Hundred Dollars ($500), less lawful deductions, within ten (10) business days after Chepes' receipt of a signed original of this Agreement and General Release and receipt of signed originals of all of the Agreements and General Releases for all of the Plaintiffs.

2.  **No Consideration Absent Execution of this Agreement.** Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "1" above, except for Employee's execution of this Agreement and General Release and the fulfillment of the promises contained herein.

3.  **General Release of All Claims.** Employee knowingly and voluntarily releases and forever discharges Chepes, its parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement and General Release, including, but not limited to, any alleged violation of:

- The Fair Labor Standards Act ("FLSA");

- Title VII of the Civil Rights Act of 1964;

- Sections 1981 through 1988 of Title 42 of the United States Code;

- The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan);

- The Immigration Reform and Control Act;

- The Americans with Disabilities Act of 1990;

- The Worker Adjustment and Retraining Notification Act;

- The Fair Credit Reporting Act;

- The Family and Medical Leave Act;

8

- The Equal Pay Act;

- Georgia AIDS Confidentiality Act – O.C.G.A.. §24-9-47;

- Georgia Equal Pay Act (Sex Discrimination in Employment) – O.C.G.A. §34-5-1 et seq.;

- Georgia Age Discrimination in Employment Act – O.C.G.A. §34-1-2;

- Georgia Equal Employment for Persons with Disabilities Code – O.C.G.A. §34-6A-1 et seq.;

- Georgia Wage Payment and Work Hour Laws;

- City of Atlanta Anti-Discrimination Ordinance, Part II, Chapter 94, Article 11, Section 94-10 et seq.;

- any other federal, state or local law, rule, regulation, or ordinance

- any public policy, contract, tort, or common law; or

- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

4.   **Governing Law and Interpretation.**   This Agreement and General Release shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision.  In the event of a breach of any provision of this Agreement and General Release, either party may institute an action specifically to enforce any term or terms of this Agreement and General Release and/or to seek any damages for breach. Should any provision of this Agreement and General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement and General Release in full force and effect.

5.   **Nonadmission of Wrongdoing.**   The Parties agree that neither this Agreement and General Release nor the furnishing of the consideration for this Agreement and General Release shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

9

6.   **Amendment**.  This Agreement and General Release may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement and General Release.

7.   **Entire Agreement.**  This Agreement and General Release sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except the Settlement Agreement, which is incorporated herein by reference. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement and General Release, except for those set forth in this Agreement and General Release.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT AND GENERAL RELEASE.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement and General Release as of the date(s) set forth below:

By:_____          By:_____, CFO
     Brent Smith                                        Chepes Mexican Grill, LLC

Date:_____          Date:_____1/4/13_____

10

## AGREEMENT AND GENERAL RELEASE

Chepes Mexican Grill, LLC ("Chepes") and Brent Jenkins, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1. **Consideration.** In consideration for signing this Agreement and General Release, and complying with its terms, and in accordance with the parties' Settlement Agreement in the case styled *Brent Smith, et al. v. Chepes Mexican Grill, LLC*, CASE #: 1:12-cv-00729-WBH ("Settlement Agreement"), Chepes agrees to pay to Employee Five Hundred Dollars ($500), less lawful deductions, within ten (10) business days after Chepes' receipt of a signed original of this Agreement and General Release and receipt of signed originals of all of the Agreements and General Releases for all of the Plaintiffs.

2. **No Consideration Absent Execution of this Agreement.** Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "1" above, except for Employee's execution of this Agreement and General Release and the fulfillment of the promises contained herein.

3. **General Release of All Claims.** Employee knowingly and voluntarily releases and forever discharges Chepes, its parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement and General Release, including, but not limited to, any alleged violation of:

- The Fair Labor Standards Act ("FLSA");

- Title VII of the Civil Rights Act of 1964;

- Sections 1981 through 1988 of Title 42 of the United States Code;

- The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan);

- The Immigration Reform and Control Act;

- The Americans with Disabilities Act of 1990;

- The Worker Adjustment and Retraining Notification Act;

- The Fair Credit Reporting Act;

- The Family and Medical Leave Act;

11

- The Equal Pay Act;

- Georgia AIDS Confidentiality Act – O.C.G.A.. §24-9-47;

- Georgia Equal Pay Act (Sex Discrimination in Employment) – O.C.G.A. §34-5-1 et seq.;

- Georgia Age Discrimination in Employment Act – O.C.G.A. §34-1-2;

- Georgia Equal Employment for Persons with Disabilities Code – O.C.G.A. §34-6A-1 et seq.;

- Georgia Wage Payment and Work Hour Laws;

- City of Atlanta Anti-Discrimination Ordinance, Part II, Chapter 94, Article 11, Section 94-10 et seq.;

- any other federal, state or local law, rule, regulation, or ordinance

- any public policy, contract, tort, or common law; or

- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

4. **Governing Law and Interpretation.** This Agreement and General Release shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement and General Release, either party may institute an action specifically to enforce any term or terms of this Agreement and General Release and/or to seek any damages for breach. Should any provision of this Agreement and General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement and General Release in full force and effect.

5. **Nonadmission of Wrongdoing.** The Parties agree that neither this Agreement and General Release nor the furnishing of the consideration for this Agreement and General Release shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

6.      **Amendment**. This Agreement and General Release may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement and General Release.

7.      **Entire Agreement.** This Agreement and General Release sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except the Settlement Agreement, which is incorporated herein by reference. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement and General Release, except for those set forth in this Agreement and General Release.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT AND GENERAL RELEASE.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement and General Release as of the date(s) set forth below:

By:_____            By: _____, CFO
     Brent Jenkins                                        Chepes Mexican Grill, LLC

Date:_____            Date: ____1/4/13_____

13

## AGREEMENT AND GENERAL RELEASE

Chepes Mexican Grill, LLC ("Chepes") and Kristian Ogletree, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1. **Consideration.** In consideration for signing this Agreement and General Release, and complying with its terms, and in accordance with the parties' Settlement Agreement in the case styled *Brent Smith, et al. v. Chepes Mexican Grill, LLC*, CASE #: 1:12-cv-00729-WBH ("Settlement Agreement"), Chepes agrees to pay to Employee One Hundred Dollars ($100), less lawful deductions, within ten (10) business days after Chepes' receipt of a signed original of this Agreement and General Release and receipt of signed originals of all of the Agreements and General Releases for all of the Plaintiffs.

2. **No Consideration Absent Execution of this Agreement.** Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "1" above, except for Employee's execution of this Agreement and General Release and the fulfillment of the promises contained herein.

3. **General Release of All Claims.** Employee knowingly and voluntarily releases and forever discharges Chepes, its parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement and General Release, including, but not limited to, any alleged violation of:

- The Fair Labor Standards Act ("FLSA");

- Title VII of the Civil Rights Act of 1964;

- Sections 1981 through 1988 of Title 42 of the United States Code;

- The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan);

- The Immigration Reform and Control Act;

- The Americans with Disabilities Act of 1990;

- The Worker Adjustment and Retraining Notification Act;

- The Fair Credit Reporting Act;

- The Family and Medical Leave Act;

14

- The Equal Pay Act;

- Georgia AIDS Confidentiality Act – O.C.G.A.. §24-9-47;

- Georgia Equal Pay Act (Sex Discrimination in Employment) – O.C.G.A. §34-5-1 et seq.;

- Georgia Age Discrimination in Employment Act – O.C.G.A. §34-1-2;

- Georgia Equal Employment for Persons with Disabilities Code – O.C.G.A. §34-6A-1 et seq.;

- Georgia Wage Payment and Work Hour Laws;

- City of Atlanta Anti-Discrimination Ordinance, Part II, Chapter 94, Article 11, Section 94-10 et seq.;

- any other federal, state or local law, rule, regulation, or ordinance

- any public policy, contract, tort, or common law; or

- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

4.    **Governing Law and Interpretation.**    This Agreement and General Release shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision.  In the event of a breach of any provision of this Agreement and General Release, either party may institute an action specifically to enforce any term or terms of this Agreement and General Release and/or to seek any damages for breach. Should any provision of this Agreement and General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement and General Release in full force and effect.

5.    **Nonadmission of Wrongdoing.**    The Parties agree that neither this Agreement and General Release nor the furnishing of the consideration for this Agreement and General Release shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

15

6.    **Amendment**.  This Agreement and General Release may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement and General Release.

7.    **Entire Agreement.**  This Agreement and General Release sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except the Settlement Agreement, which is incorporated herein by reference. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement and General Release, except for those set forth in this Agreement and General Release.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT AND GENERAL RELEASE.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement and General Release as of the date(s) set forth below:

By:_____          By: _____, CFO
   Kristian Ogletree                     Chepes Mexican Grill, LLC

Date:_____          Date: __1/4/13_____

16

## AGREEMENT AND GENERAL RELEASE

Chepes Mexican Grill, LLC ("Chepes") and Rodrick Ringo, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1. **Consideration.** In consideration for signing this Agreement and General Release, and complying with its terms, and in accordance with the parties' Settlement Agreement in the case styled *Brent Smith, et al. v. Chepes Mexican Grill, LLC*, CASE #: 1:12-cv-00729-WBH ("Settlement Agreement"), Chepes agrees to pay to Employee One Hundred Dollars ($100), less lawful deductions, within ten (10) business days after Chepes' receipt of a signed original of this Agreement and General Release and receipt of signed originals of all of the Agreements and General Releases for all of the Plaintiffs.

2. **No Consideration Absent Execution of this Agreement.** Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "1" above, except for Employee's execution of this Agreement and General Release and the fulfillment of the promises contained herein.

3. **General Release of All Claims.** Employee knowingly and voluntarily releases and forever discharges Chepes, its parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement and General Release, including, but not limited to, any alleged violation of:

- The Fair Labor Standards Act ("FLSA");

- Title VII of the Civil Rights Act of 1964;

- Sections 1981 through 1988 of Title 42 of the United States Code;

- The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan);

- The Immigration Reform and Control Act;

- The Americans with Disabilities Act of 1990;

- The Worker Adjustment and Retraining Notification Act;

- The Fair Credit Reporting Act;

- The Family and Medical Leave Act;

17

- The Equal Pay Act;

- Georgia AIDS Confidentiality Act – O.C.G.A.. §24-9-47;

- Georgia Equal Pay Act (Sex Discrimination in Employment) – O.C.G.A. §34-5-1 et seq.;

- Georgia Age Discrimination in Employment Act – O.C.G.A. §34-1-2;

- Georgia Equal Employment for Persons with Disabilities Code – O.C.G.A. §34-6A-1 et seq.;

- Georgia Wage Payment and Work Hour Laws;

- City of Atlanta Anti-Discrimination Ordinance, Part II, Chapter 94, Article 11, Section 94-10 et seq.;

- any other federal, state or local law, rule, regulation, or ordinance

- any public policy, contract, tort, or common law; or

- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

4. **Governing Law and Interpretation.** This Agreement and General Release shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement and General Release, either party may institute an action specifically to enforce any term or terms of this Agreement and General Release and/or to seek any damages for breach. Should any provision of this Agreement and General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement and General Release in full force and effect.

5. **Nonadmission of Wrongdoing.** The Parties agree that neither this Agreement and General Release nor the furnishing of the consideration for this Agreement and General Release shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

18

6.      **Amendment**.  This Agreement and General Release may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement and General Release.

7.      **Entire Agreement.**  This Agreement and General Release sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except the Settlement Agreement, which is incorporated herein by reference. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement and General Release, except for those set forth in this Agreement and General Release.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT AND GENERAL RELEASE.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement and General Release as of the date(s) set forth below:

By:_____            By: _____, CFO
      Rodrick Ringo                    Chepes Mexican Grill, LLC

Date:_____            Date:____1/4/13_____

19

### AGREEMENT AND GENERAL RELEASE

Chepes Mexican Grill, LLC ("Chepes") and Davis Pidgeon, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1.  **Consideration.**  In consideration for signing this Agreement and General Release, and complying with its terms, and in accordance with the parties' Settlement Agreement in the case styled *Brent Smith, et al. v. Chepes Mexican Grill, LLC*, CASE #: 1:12-cv-00729-WBH ("Settlement Agreement"), Chepes agrees to pay to Employee One Hundred Dollars ($100), less lawful deductions, within ten (10) business days after Chepes' receipt of a signed original of this Agreement and General Release and receipt of signed originals of all of the Agreements and General Releases for all of the Plaintiffs.

2.  **No Consideration Absent Execution of this Agreement.**  Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "1" above, except for Employee's execution of this Agreement and General Release and the fulfillment of the promises contained herein.

3.  **General Release of All Claims.**  Employee knowingly and voluntarily releases and forever discharges Chepes, its parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement and General Release, including, but not limited to, any alleged violation of:

- The Fair Labor Standards Act ("FLSA");

- Title VII of the Civil Rights Act of 1964;

- Sections 1981 through 1988 of Title 42 of the United States Code;

- The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan);

- The Immigration Reform and Control Act;

- The Americans with Disabilities Act of 1990;

- The Worker Adjustment and Retraining Notification Act;

- The Fair Credit Reporting Act;

- The Family and Medical Leave Act;

20

- The Equal Pay Act;

- Georgia AIDS Confidentiality Act – O.C.G.A.. §24-9-47;

- Georgia Equal Pay Act (Sex Discrimination in Employment) – O.C.G.A. §34-5-1 et seq.;

- Georgia Age Discrimination in Employment Act – O.C.G.A. §34-1-2;

- Georgia Equal Employment for Persons with Disabilities Code – O.C.G.A. §34-6A-1 et seq.;

- Georgia Wage Payment and Work Hour Laws;

- City of Atlanta Anti-Discrimination Ordinance, Part II, Chapter 94, Article 11, Section 94-10 et seq.;

- any other federal, state or local law, rule, regulation, or ordinance

- any public policy, contract, tort, or common law; or

- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

4. **Governing Law and Interpretation.** This Agreement and General Release shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement and General Release, either party may institute an action specifically to enforce any term or terms of this Agreement and General Release and/or to seek any damages for breach. Should any provision of this Agreement and General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement and General Release in full force and effect.

5. **Nonadmission of Wrongdoing.** The Parties agree that neither this Agreement and General Release nor the furnishing of the consideration for this Agreement and General Release shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

6.     **Amendment**.  This Agreement and General Release may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement and General Release.

7.     **Entire Agreement.**  This Agreement and General Release sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except the Settlement Agreement, which is incorporated herein by reference. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement and General Release, except for those set forth in this Agreement and General Release.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT AND GENERAL RELEASE.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement and General Release as of the date(s) set forth below:

By:_____      By: _____, CFO
     Davis Pidgeon                           Chepes Mexican Grill, LLC

Date:_____      Date:_____1/4/13_____

22

## AGREEMENT AND GENERAL RELEASE

Chepes Mexican Grill, LLC ("Chepes") and Nicole Casorio, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1.     **Consideration.**  In consideration for signing this Agreement and General Release, and complying with its terms, and in accordance with the parties' Settlement Agreement in the case styled *Brent Smith, et al. v. Chepes Mexican Grill, LLC*, CASE #: 1:12-cv-00729-WBH ("Settlement Agreement"), Chepes agrees to pay to Employee One Hundred Dollars ($100), less lawful deductions, within ten (10) business days after Chepes' receipt of a signed original of this Agreement and General Release and receipt of signed originals of all of the Agreements and General Releases for all of the Plaintiffs.

2.     **No Consideration Absent Execution of this Agreement.**  Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "1" above, except for Employee's execution of this Agreement and General Release and the fulfillment of the promises contained herein.

3.     **General Release of All Claims.**  Employee knowingly and voluntarily releases and forever discharges Chepes, its parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement and General Release, including, but not limited to, any alleged violation of:

- The Fair Labor Standards Act ("FLSA");

- Title VII of the Civil Rights Act of 1964;

- Sections 1981 through 1988 of Title 42 of the United States Code;

- The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan);

- The Immigration Reform and Control Act;

- The Americans with Disabilities Act of 1990;

- The Worker Adjustment and Retraining Notification Act;

- The Fair Credit Reporting Act;

- The Family and Medical Leave Act;

23

- The Equal Pay Act;

- Georgia AIDS Confidentiality Act – O.C.G.A.. §24-9-47;

- Georgia Equal Pay Act (Sex Discrimination in Employment) – O.C.G.A. §34-5-1 et seq.;

- Georgia Age Discrimination in Employment Act – O.C.G.A. §34-1-2;

- Georgia Equal Employment for Persons with Disabilities Code – O.C.G.A. §34-6A-1 et seq.;

- Georgia Wage Payment and Work Hour Laws;

- City of Atlanta Anti-Discrimination Ordinance, Part II, Chapter 94, Article 11, Section 94-10 et seq.;

- any other federal, state or local law, rule, regulation, or ordinance

- any public policy, contract, tort, or common law; or

- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

4.      **Governing Law and Interpretation.**   This Agreement and General Release shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision.  In the event of a breach of any provision of this Agreement and General Release, either party may institute an action specifically to enforce any term or terms of this Agreement and General Release and/or to seek any damages for breach. Should any provision of this Agreement and General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement and General Release in full force and effect.

5.      **Nonadmission of Wrongdoing.**   The Parties agree that neither this Agreement and General Release nor the furnishing of the consideration for this Agreement and General Release shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

6.      **Amendment**. This Agreement and General Release may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement and General Release.

7.      **Entire Agreement.** This Agreement and General Release sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except the Settlement Agreement, which is incorporated herein by reference. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement and General Release, except for those set forth in this Agreement and General Release.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT AND GENERAL RELEASE.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement and General Release as of the date(s) set forth below:

By:_____
     Nicole Casorio

Date:_____

By: _____, CFO
     Chepes Mexican Grill, LLC

Date:_____1/4/13_____

4842-7921-2306, v. 1

25